IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**FELIX G. TORRES,**

**Plaintiff,**

v.

**CIVIL NO. 22-1218 (PAD)**

**ALLIED PILOTS ASSOCIATION,**

**Defendant.**

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff *pro se* initiated this action against Allied Pilots Association ("APA") for breach of the duty of fair representation under the Railway Labor Act, 45 U.S.C. §§ 151, et seq. ("RLA") in connection with a grievance arising from the termination of his employment with American Airlines ("American" or the "Company"), and for attempting to exclude him from a company equity distribution (Docket No. 1). Before the court is APA's motion for summary judgment (Docket No. 114), which plaintiff opposed (Docket No. 124). APA replied (Docket No. 129) and plaintiff sur-replied (Docket No. 138). For the reasons explained below, APA's motion must be granted and the case dismissed.

**I.   BACKGROUND**

On May 9, 2011, American terminated plaintiff's employment for failure to successfully complete MD-80 flight training and not being able to provide any reasonable expectation that he could be trained to do so (Docket No. 115-3).[1] On May 11, 2011, plaintiff filed a grievance

---

[1] The MD-80 is also known as "the S80 or the Super 80" (Docket No. 115-2, p. 2, n. 2).

Torres v. Allied Pilots Ass'n.
Civil No. 22-1218 (PAD)
Opinion and Order
Page 2

challenging his termination (Docket No. 115, ¶ 5). The grievance proceeded through the process agreed on between American and APA as the collective bargaining representative of American's pilots and on November 1, 2011, was submitted to the American-APA Pilot System Board of Adjustment (the "Board") for arbitration. Id. After three days of hearings in December 2020, the Board ruled, among other things, that the termination was for just cause, and that the employer reasonably concluded that further training would not be of any value (Docket No. 115-2, p. 32).

On April 12, 2022, plaintiff filed the Complaint in the Southern District of Florida (Docket No. 1). On May 12, 2022, the case was transferred to this court (Docket No. 10). On December 22, 2022, APA moved to dismiss under Fed.R.Civ.P. 12(b)(2), (4) and (5), and to quash for insufficient process and service of process (Docket No. 18). On January 13, 2023, plaintiff responded to APA's motion (Docket No. 23). On February 3, 2023, the court denied the motion (Docket No. 26). On that same date, APA filed a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 24). On March 9, 2023, plaintiff opposed the dismissal request (Docket No. 36). On March 16, 2023, APA replied to plaintiff's opposition (Docket No. 42). On March 30, 2023, plaintiff sur-replied to APA's filing (Docket No. 45).

On April 4, 2023, the court denied the motion to dismiss, noting that the arguments raised in the motion reflected factual and evidentiary issues that in the court's view were better suited for disposition under Fed.R.Civ.P. 56 or trial (Docket No. 46). On April 28, 2023, APA answered the Complaint admitting some facts, denying others and raising various affirmative defenses (Docket No. 48). Afterward, the parties engaged in extensive discovery, which led to several disputes that required court intervention. See, generally, Docket Nos. 61-65; 67; 69-72; 77-111.

On April 19, 2024, after close of discovery, APA moved for summary judgment (Docket No. 114). On June 3, 2024, plaintiff filed an "… Unsworn Response to Defendant Allied Pilot's

Association's Statement of Uncontested Material Facts Pursuant to Rule 56 Made Under Penalty of Perjury" (Docket No. 120). On June 10, 2024, he followed up with a "… Supplemental Response to Allied Pilots Association's Motion for Summary Judgment" (Docket No. 124). On July 22, 2024, APA replied to plaintiff's supplemental response (Docket No. 129). On August 21, 2024, plaintiff sur-replied (Docket No. 138).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Material issues are those that have "the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dept. of Just., 355 F.3d 6, 19 (1st Cir. 2004). As to issues on which the nonmovant has the burden of proof, the movant "need do no more than aver" absence of evidence to support the nonmoving party's case. Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).

All "reasonable factual inferences" must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013). To resist summary judgment, however, the nonmovant must do more than show "some metaphysical doubt as to a material fact." Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It cannot rely "upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir.2000)(quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)).

### III.  FACTS[2]

In January 2011, American hired plaintiff as a "flow-through" pilot from American Eagle. See, "Defendant Allied Pilots Association's Statement of Uncontested Material Facts Pursuant to Local Rule 56(b)" (Docket No. 115, ¶ 2). At that time, he became a member of APA –the certified collective bargaining representative of American's pilots. Id., ¶¶ 1 and 3. On May 9, 2011, he was terminated for failure to successfully complete MD-80 flight training and not being able to provide any reasonable expectation that he could be trained to do so. Id. ¶ 4. On May 11, 2011, he filed a grievance challenging his termination. Id., ¶ 5. The grievance proceeded through the

---

[2] Before setting forth the relevant facts of the case, it is appropriate to measure the principles underlying Local Civ. R. 56 against the parties' Rule 56 submissions. Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Investment, LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by specific citations to the record, that the movant contends are uncontested and material. See, Local Civil Rule 56(b)(laying down requirement). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph, and may present, in a separate section, additional facts, set forth in separate numbered paragraphs. See, Local Rule 56(c)(describing procedure). If a party fails to properly controvert adequately supported factual statements, the court may treat those facts uncontroverted as stated. See, Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018)(so noting). The requirement facilitates review of summary judgment materials. Litigants who ignore the rule do so "at their peril," Mariani-Colón v. Dep't of Homeland Security, 511 F.3d 216, 219 (1st Cir. 2007), for they obstruct the review process, forcing the court to spend its limited resources figuring out if genuine issues of material fact exist precluding summary judgment. A review of plaintiff's opposing and additional statements of fact (Docket Nos. 120 and 125) reveals that they are defective insofar as: (1) they consist of conclusory assertions or unsupported argumentation (see, Mancini v. City of Providence, 909 F.3d 32, 44 (1st Cir. 2018)("a [party] cannot avoid summary judgment by relying solely on conclusory allegations")); (2) they are irrelevant, unresponsive to, or fail to controvert, the propounded statement of fact; (3) the evidence cited does not support the opposing factual averment; (4) the record citations do not comply with the Local R. Civ. 56's specificity requirements (see, Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)(noting that statements that rely on broad references to exhibits fail to comply with Local Civ. R. 56(e)'s specific record citation requirement)); and/or (5) they introduce numerous additional facts, but not in a separate set of numbered statements (see, Rivera-Marrero v. Presbyterian Community Hospital, Inc., 2016 WL 7670044, *3 (D.P.R. Dec. 5, 2016)(noting that it is improper to raise additional facts not contained in a separate, numbered section)). See, generally, Fed.R.Civ.P. 56; Local Civ. R. 56. APA's responses at Docket Nos. 130 and 131 are helpful in identifying and deconstructing the deficiencies found in plaintiff's opposing and additional statements. Given these parameters, the court: (1) disregards plaintiff's opposing and additional statements of fact; and (2) will consider APA's statements admitted as stated, for they are properly supported. See, Cabán Hernández, 486 F.3d at 7 ("In the event that a party opposing summary judgment fails to act in accordance with the rigors that [Local Rule 56] imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated"). Nevertheless, at various points throughout this Opinion reference is made to some of plaintiff's statements, to highlight why they do not work to preclude summary judgment.

channels of the American-APA collectively bargained process, and on November 1, 2011, was submitted to the Board for arbitration. Id.

In December 2020, the Board conducted a three-day evidentiary hearing on the grievance. Id., ¶ 57.[3] On February 5, 2021, the parties submitted post-hearing briefs (Docket No. 115, p. 1). On July 27, 2021, the Board issued an award, finding that American had just cause to terminate plaintiff's employment; and that the Company had afforded plaintiff a fair and reasonable opportunity to qualify on the MD-80 aircraft but eventually it became evident that he was not going to be able qualify to fly this aircraft (Docket No. 115-2, pp. 31-32). Then, the Company made a reasonable decision, that further training would not be of any value, and let plaintiff go. Id. at p. 32. At the same time, the Board expressed that plaintiff should be given an opportunity to reapply for a position as a First Officer with American without his failure to qualify on the MD-80 being a disqualifying factor,[4] that plaintiff could answer "No" to any questions whether he had a negative training event at American or whether he had been terminated by the Company; and that absent good and relevant reason, American was to give plaintiff's application favorable consideration. Id.[5]

On August 17, 2021, APA notified plaintiff in telephone call that the Board had upheld his termination and determined that the termination was for just cause (Docket No. 120, ¶¶ 81, 83).

---

[3] During the hearing, APA argued that American: (1) lacked just cause to terminate plaintiff; (2) failed to provide adequate training to plaintiff; (3) neglected to investigate the cause for plaintiff's training issues; and (4) did not offer plaintiff additional training methods that might have helped him pass his training (Docket No. 115, ¶¶ 60-61). APA presented training experts that were critical of American's training of plaintiff and concluded that plaintiff was essentially set up to fail because he was not informed of the progress of his training or that American was observing deficiencies in his training. Id., ¶¶ 63-64.

[4] As of the date of the award, the MD-80 had been phased out of American's fleet (Docket No. 115-2, p. 2, n. 2).

[5] Other aspects of the award are discussed below.

Torres v. Allied Pilots Ass'n.
Civil No. 22-1218 (PAD)
Opinion and Order
Page 6

On that date, APA emailed to plaintiff a zip file with the arbitration hearings transcripts, APA and American's post-trial briefs, and a copy of the award (Docket No. 115-19).[6] On August 26, 2021, APA mailed plaintiff a copy of the award (Docket No. 115, ¶ 88).[7] Sometime in the fall of 2021, plaintiff started, but did not complete, an online work application with American Airlines. Id., ¶ 92. Upon learning of that fact from a representative of American, APA concluded that plaintiff was aware that American was hiring pilots. Id., ¶ 93.[8]

Finally, plaintiff received the company equity distribution. Id., ¶ 109. The program originated in American's 2011 bankruptcy. See, Preitz v. Allied Pilots Ass'n, 2023 WL 2267212, *5 (E.D. Pa. Feb. 28, 2023)(describing equity distribution program and related issues).[9] As negotiated and approved as part of the bankruptcy reorganization process, in exchange for releasing American from certain obligations under the collective bargaining agreement, APA

---

[6] During his deposition, plaintiff admitted that he received the email and was able to open the attachment (Docket No. 115-4, p. 90, ln. 21–p. 91, ln. 17). In opposing summary judgment, however, he asserts that even though he received the email on August 17, 2021, when he opened the attachment, it only contained a document with the APA logo (Docket No. 120, ¶¶ 85-86). Further, he claims that did not receive the arbitration's decision and award until October 20, 2021, after he wrote to one of the arbitrators, Arbitrator Simon. Id., ¶ 88. APA rejects plaintiff's statements as a sham affidavit seeking to create an issue of fact to avoid summary judgment, adding that plaintiff did not even attempt to explain the contradiction that results from the new "explanation" and that it was somebody else who wrote plaintiff's response to ¶ 86, for it states "look for anything that says you only saw APA's logo" (Docket No. 130, pp. 64-65). Although plaintiff should have been forthcoming in the deposition, it does not change the fact that he knew since August 17, 2021, that the Board had upheld his termination, concluding that American had acted with just cause.

[7] Plaintiff denies this statement, asserting that he received the award in October 2021, after he wrote to Arbitrator Barry E. Simon (Docket No. 120, ¶ 88).

[8] Plaintiff denies this, claiming that he first learned in April 2022 that American was hiring pilots, and that on April 14, 2022, he sent an application/resume by U.S. Mail to American's Human Resources at the Office of the Director of Flight Operations (Docket Nos. 115, ¶¶ 92, 94-97; 120, ¶¶ 92, 94-97).

[9] As for the bankruptcy case, see In re AMR Corporation et al., No. 11-15463 (Bank. S.D.N.Y. 2011). The debtors included AMR, American, and 18 other entities. The case concluded on December 9, 2013 (Docket No. 115, ¶ 6).

received a share of stock to be distributed among its members. Id.[10]

## IV. DISCUSSION

Plaintiff alleges that APA breached its duty of fair representation to him under the RLA (Docket No. 1).[11] The duty of fair representation is "akin to the duty owed by other fiduciaries to their beneficiaries." Air Line Pilots Association, Int'l. v. O'Neill, 499 U.S. 65, 74 (1991). As developed, it imposes on unions the obligation to serve the interests of all its members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. Id. at 76. Plaintiff complains that APA breached this duty in: (1) failing to move the grievance forward in a span of over nine years; (2) not arguing at the grievance hearing that American's training personnel discriminated against Hispanic pilots such as plaintiff; (3) perfunctorily handling his case; (4) attempting to exclude him from a company equity distribution; and (5) not notifying him that American had begun receiving applications for

---

[10] At this deposition, plaintiff admitted that he received the equity distribution (Docket No. 115-4, p. 36, ln. 13–p. 39, ln. 12); that he was not complaining that he did not receive it, but that APA did not advise him he was entitled to get it. Id. He also pointed out that former American Eagle pilots told him to check because he was entitled to receive the distribution; that he went through the corresponding steps; proved he was entitled to that distribution; and received it. Id. Changing course, in opposing summary judgment he claims that he did not receive the amount other similarly situated pilots received (Docket No. 130, p. 77). What he now alleges constitutes a new claim, and it is way too late in the litigation to bring new claims to the fore. A plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion for summary judgment. See, Ocasio v. Hogar Geobel, Inc., 693 F.Supp.2d 167, 172 (D.P.R. 2008)(discussing topic).

[11] Congress enacted the RLA in 1926 to "promote stability in labor-management relations" in the railroad industry. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). In 1936, it extended the statute to the then small-but-growing air transportation industry, except for a provision dealing with the National Railroad Adjustment Board. See, International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 958 (1963)(describing 1936 amendments to the RLA).

pilot positions in 2021 (Docket No. 1, ¶¶ 12, 26 & "Conclusion").[12] As to Claim Nos. 1-4, APA seeks dismissal on the merits and on timeliness grounds (Docket No. 114). Regarding Claim No. 5, 5, it attacks the claim on the merits. Id. The court will focus on the timeliness of Claim Nos. 1-3, and on the merits of Claim Nos. 4-5.

### A. **Timeliness (Claim Nos. 1-3)**

The statute of limitations in a stand-alone duty of fair representation action under the RLA is six months, the same statute of limitations that has been applied to duty of fair representation actions under the Labor Management Relations Act, 29 U.S.C. §§ 185, et seq. ("LMRA"). As background, in DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151 (1983), the Supreme Court applied the six-month limitation period set in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) ("NLRA"), to an action without an expressly applicable statute of limitations, that is, a hybrid action for an employer's breach of a collective bargaining agreement and breach of the union's duty of fair representation under the LMRA. The Supreme Court found it preferable to rely on the "readily available" limitations period set out in § 10(b) of the NLRA, as that period is "designed to accommodate a balance of interests" similar to those at stake in the hybrid action. DelCostello, 462 U.S. at 155, 168-169 (observing that while a short period "would endanger employees' ability to recover most of what is due them," application of a longer period "would preclude the relatively rapid final resolution of labor disputes favored by federal law").

---

[12] Concerning APA's handling of the grievance, plaintiff complains that APA excluded him from participating in the selection of the arbitrator or the selection of arbitration dates; that APA threatened plaintiff to cancel the arbitration if plaintiff did not attend; that APA provided only one scheduled meeting to prepare for arbitration; that APA allowed American representatives to intimidate him into accepting an unreasonable settlement offer; that APA reached out to his then employer to obtain leave for the arbitration; that APA refused to use an expert witness that plaintiff wanted, even though he was willing to pay for the expenses; and APA refused to use an expert when the expert advised APA that it would lose if the arbitration was conducted as planned. (Docket No. 1, ¶¶ 13-17).

In the wake of DelCostello, a majority of the circuits have extended § 10(b)'s six-month limitations period to stand-alone claims against a union for breach of the duty of fair representation under the RLA. See, Smallakoff v. Air Line Pilots Ass'n, Int'l, 825 F.2d 1544, 1545-46 (11th Cir. 1987)(collecting cases from the Second, Third, Fourth, Fifth, Seventh, Eighth, and Tenth Circuits and siding with those seven Courts, noting that "[t]here is no persuasive reason why the same [six-month] limitations period should not be uniformly applied throughout the country"); Emory v. United Air Lines, Inc., 720 F.3d 915, 931 (D.C. Cir. 2013)(holding that "§ 10(b)'s six-month limitation period applies to the duty of fair representation claims brought under the RLA").

Even though the First Circuit has not squarely addressed the issue of the appropriate statute of limitations for unfair representation claims in connection with the RLA, see, Linder v. Berge, 739 F.2d 686, 689 (1st Cir. 1984)(declining to resolve the issue because under either of the suggested limitations periods, i.e., six months or two years, the claim was nonetheless time-barred), in West v. Conrail, 481 U.S. 35 (1987), the Supreme Court implied that it would apply § 10(b)'s six-month period. Id. at 38, n. 2 ("We find no reason to distinguish the [LMRA] from the [RLA] for the limited purpose of determining whether service must be effected within [§ 10(b)'s] limitations period").

With these developments in mind, the court applies § 10(b)'s six-month limitations period here. The period starts running "when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." Graham v. Bay State Gas Co., 779 F.2d 93, 94 (1st Cir. 1985); Yordan v. American Postal Workers Union, AFL-CIO, 293 F.R.D. 91, 97 (D.P.R. 2013)(similar). Given that plaintiff filed the Complaint on April 12, 2022, to survive summary judgment he would have to show that he did not know or could not have reasonably known that APA had breached its duty of fair representation as he has complained about until October 12,

2021. See, Spencer v. Loc. 26, 941 F.Supp.2d 193, 196 (D. Mass. 2013)(tracing claim deadline to six months prior to filing of the complaint).

From the general to the particular, based on the undisputed facts, plaintiff was aware of the gravamen of his allegations well before October 12, 2021. On May 9, 2011, American terminated his employment. On May 11, 2011, he lodged a grievance. In December 2020, the Board conducted a three-day hearing, a hearing in which he testified (Docket No. 115-4, pp. 18-19). Yet, at no point during that nine-plus year period, or within six-months after the last day of the hearing in 2020, did plaintiff file a complaint or internal appeal with APA seeking to rectify its delay in moving the grievance forward; in failing to raise American's alleged discriminatory animus; or attacking APA's perfunctory preparation for and performance in presenting plaintiff's grievance during the December 2020 hearings.

In this light, it is apparent that plaintiff knew or should have known of APA's alleged deficiencies by December 3, 2020, at the latest.[13] As well, he did not come to court until April 12, 2022, more than six months after having been notified of the Board's decision. And he offers no meaningful ground (if any at all) for the proposition that he undertook any diligent efforts that would in any way toll the running of the clock on those claims until the date he initiated the instant

---

[13] The parties dispute why the hearing could not be scheduled earlier. APA notes that between 2011-2013 AMR Corporation, American's parent company, was undergoing Chapter 11 bankruptcy reorganization; that before and during AMR's bankruptcy, APA engaged in negotiations with American for a successor collective bargaining agreement and as part of those negotiations, the parties agreed on a list of grievances that would survive the bankruptcy, which included plaintiff's grievance; in 2013, American merged with US Airways, which caused APA to inherit hundreds of outstanding grievances between US Airways and its pilot union, and resulted in nearly six hundred settlements and arbitrations over the next years; and Hurricane Maria in 2017 (Docket No. 114, p. 4). As well, a hearing scheduled for December 2018 was cancelled after plaintiff agreed to settle with American, but he changed his mind after the arbitration date had passed. Id. at pp. 4-5. Arbitration slots were set aside for plaintiff's grievance in November 2019 and March 2020 but then cancelled at plaintiff's request. Id. at p. 5. According to APA, plaintiff was unable to attend the first four arbitration slots set aside for his grievance. Id. He was able to attend and participated in the fifth arbitration slot in December 2020. Id. Plaintiff takes issue with this narrative, maintaining that the hearing should have been scheduled earlier (Docket No. 124, pp. 8-12). Maybe. But that is not the issue before the court. Rather, it is the timeliness of his claims against APA.

action in April 2022. Under these circumstances, Claims Nos. 1-3 are time-barred, and must be dismissed.[14]

### B. Claim No. 4

Plaintiff alleges that APA attempted to exclude him from a company equity distribution (Docket No. 1, ¶ 12). As mentioned earlier, he admitted in his deposition that he received the distribution, and stated that he was not complaining that he did not receive it (Docket No. 115-4, p. 36, ln. 13–p. 39, ln. 12). Instead, the issue for him is that APA did not advise him that he was entitled to receive the distribution. Id. Along this line, he asserted that former American Eagle pilots told him to check because he was entitled to receive the distribution; that he went through the corresponding steps; proved he was entitled to the distribution; and received it. Id. On this record, he was not prejudiced by the lack of advice he complains about.[15] Thus, Claim No. 4 must be dismissed.

---

[14] In opposing summary judgment, plaintiff claimed for the first time, that prior to his termination in May 2011, APA breached its duty of fair representation to him by failing to properly oversee his training or provide assistance with his training and failing to meet with him in advance of the meeting wherein he was terminated (Docket No. 124, pp. 12-13). These claims do not alter the disposition of the case. As noted in Note 10, a plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion for summary judgment. Besides, in the end, these new claims would be barred by the six-month statute of limitations that bars the remaining arbitration-related claims, that is Claims Nos. 1-3.

[15] It is not entirely clear when plaintiff applied for and received the distribution. Yet, from all accounts, those events occurred in 2013, more than six months before the filing of the Complaint, which would also make the "lack of advice" claim untimely. The Preitz court noted that the equity distribution process "took place in 2013." See, 2023 WL 2267212, at *13. Opposing summary judgment, plaintiff submitted various documents, including the "Equity Distribution APA Board of Directors-Approved Eligibility and Allocation," dated April 3, 2013 (Docket No. 120-2, pp. 41-64). The document includes the "Allied Pilots Association Equity Distribution Letter of Enforcement and Promissory Note" (id., p. 54), explaining the program and stating that any objection or challenge to the allocation decision must be made through the equity distribution resolution procedure in accordance with APA procedures and that any dispute, complaint, claim, or grievance arising from or relating to any challenge to or the interpretation, application, or enforcement of all or any portion of the promissory note shall be subject to mandatory arbitration pursuant to the Federal Arbitration Act. Id., p. 55. The note provides a space for signatures, with a blank line to be filled out for day and month, ending with "2013." Id.

### C. Claim No. 5

Plaintiff alleges that APA failed to timely notify him of when American had begun accepting pilot applications (Docket No. 1, ¶ 26). He relies on language in the award stating, as relevant, that "[plaintiff] shall have sixty (60) days from the date he is notified that pilot applications are being accepted by [American] to exercise his right to reapply for employment. . . . "It will be [plaintiff's] responsibility to keep [APA] apprised of his contact information or any changes thereto so that he can be notified by [APA] (by email and Certified Mail) when applications are being accepted." Id., ¶¶ 23-26; Docket No. 115-2, p. 33. The award does not impose on APA the obligation to notify plaintiff that American was accepting pilot applications. It states that APA can notify him of that fact, not that it shall do so. Viewed through this prism, that APA did not notify plaintiff of this event cannot support a duty of fair representation claim.

Furthermore, assuming that APA had that obligation does not lead to a different result. Union actions, or inactions, are arbitrary if the behavior "is so far outside a wide range of reasonableness as to be irrational." O'Neill, 499 U.S. at 67. Mere negligence or error "is not enough." MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987). To this end, the evidence shows that on October 29, 2021, American notified APA that plaintiff had previously started, but not completed, an online job application with the airline. Upon learning that plaintiff had initiated an online application, APA concluded that plaintiff was already aware that American was hiring pilots and left it at that. There was no reason to notify plaintiff of what he already knew

This element dispels any notion that APA acted in bad faith or arbitrarily in not informing plaintiff of the hiring period. See, Sanchez, 120 F.Supp.3d at 38 (noting that failure to perform ministerial act –i.e., failure to file a grievance within the established deadline to do so– "is not a breach of the duty of fair representation, especially when the union's failure can be explained");

Shufford v. Truck Drivers, Helpers, Taxicab Drivers, Garage Emps. & Airport Emps. Local Union No. 355, 954 F.Supp. 1080, 1090 (D. Md. 1996)(union's late filing of grievance, and union's mistaken belief that union member would not be prejudiced from that late filing, was "at most negligent," and not irrational).

In the same way, although, as noted above, plaintiff denied that he had started but not completed an online job application with American, the point is of no moment, for he has not contradicted APA's version that American relayed that information to it.  See, O'Horo v. Boston Medical Center Corporation, 131 F.4th 1, 15 (1st Cir. 2025)(focusing pretext inquiry in employment discrimination action on the perception of the decisionmaker); Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria-Puerto Rico, 404 F.3d 42, 45 (1st Cir. 2005)(similar).[16]  In consequence, Claim No. 5 must be dismissed.[17]

## V.   CONCLUSION

For the reasons stated, APAs' motion for summary judgment (Docket No. 114) is GRANTED, and the case, DISMISSED.

Judgment shall be entered accordingly.

---

[16] Plaintiff responded to APA's statement expressing that APA provided insufficient information to verify the truth or falsity of the statement (Docket No. 120, ¶ 93). Yet, he acknowledged receiving nearly 16,000 documents from APA during discovery (id., ¶ 90) and was shown and served with the documentary basis (email chain) for APA's statement. See, Docket No. 115-22.

[17] Plaintiff alleges that in April 2022, he heard from a friend that American was hiring pilots and sent a cover letter and resume by U.S. Mail to an old address American used to have for a long time and that he had in his own records, but never received an answer from American to his resume and cover letter (Docket No. 115, ¶¶ 96-97, 104). Despite not receiving an answer from American and knowing from a friend that American was hiring, plaintiff never went online to find out if he had followed the proper process to apply. Id., ¶ 105. In any event, the award does not impose on APA the obligation to inform plaintiff how to apply for a job with American. He admitted as much in his deposition (Docket No. 115-4, p. 49, ln. 3-7).

<u>Torres</u> v. <u>Allied Pilots Ass'n.</u>
Civil No. 22-1218 (PAD)
Opinion and Order
Page 14

**SO ORDERED**.

In San Juan, Puerto Rico, this 22nd day of April, 2025.

<u>s/Pedro A. Delgado-Hernández</u>
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge